UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANGELA T. HUBBARD, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 1:05-cv-0216-DFH-TAB |
| MIDLAND CREDIT MANAGEMENT, INC., and MRC RECEIVABLES CORP. | ) ) ) ) | |
| Defendant. | ) ) | |
| ANGELA T. HUBBARD, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | CASE NO. 1:05-cv-0218-DFH-TAB |
| v. | ) ) | |
| M.R.S. ASSOCIATES, INC., a New Jersey corporation, | ) ) ) | |
| Defendant. | ) | |

ENTRY ON MOTIONS TO APPROVE SURVEY METHODOLOGY

In these two cases under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, plaintiff Angela Hubbard claims that she was the victim of settlement offers. She alleges that the two debt collectors in these two cases sent her limited time settlement offers that misled her into thinking that they would not be renewed. In truth, she claims, the debt collectors would have been willing to extend the time or to repeat their offers. This court originally dismissed

the complaints, but the Seventh Circuit reversed and remanded for further proceedings. See *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 778 (7th Cir. 2007). The court recently granted Hubbard's motions to certify plaintiff classes in these two cases. 2008 WL 5384219 (S.D. Ind. Dec. 19, 2008); 2008 WL 5384294 (S.D. Ind. Dec. 19, 2008).

Based on her reading of the Seventh Circuit's decision in *Evory*, Hubbard concludes that she needs consumer survey evidence in these cases to avoid summary judgment. See *Evory*, 505 F.3d at 778 (reversing Rule 12(b)(6) dismissals in Hubbard's cases but affirming summary judgment for defendant in similar case supported only by flawed survey evidence). Hubbard has now moved in each case for an order seeking the court's approval of her proposed surveys before she spends the substantial sums needed to conduct them. Defendants oppose the motions. The court heard argument on the motions on January 30, 2009.

The first question is whether the court should entertain the motions at all. This court's answer is a hesitant and tentative yes, subject to the prospect of painful lessons if it turns out to be a mistake. In another FDCPA settlement case, Judge Kocoras denied a similar request in *Kubert v. AID Associates*, No. 05-C-5865 (N.D. Ill. May 29, 2008), saying the request was improper, that he could not rule on the admissibility of the survey before it was conducted, and that he did not want to act as an adviser for the plaintiffs. Those are serious concerns, but they

do not persuade this court that it would always be error for a district court to exercise its discretion to entertain such a motion, as a type of motion *in limine*.

In an earlier trademark case, I entertained a similar motion and denied it on the merits, finding that the proposed survey methodology was so biased and unreliable as to render any results inadmissible. *Simon Property Group L.P. v. mySimon, Inc.*, 104 F. Supp. 2d 1033, 1035 (S.D. Ind. 2000). I did so based on a suggestion from the Seventh Circuit in *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 386 (7th Cir. 1976), to the effect that it might be useful to have the parties agree on a survey methodology ahead of time. That suggestion might have been unduly optimistic about the ability of adverse parties to resolve their differences before they know how the survey is likely to turn out, and this court's experience in *Simon Property Group v. mySimon* involved a good deal of wasted time and risked getting the court involved in negotiating the development of evidence by the parties and their counsel. See 104 F. Supp. 2d at 1052. Nevertheless, where a party plans to offer survey evidence that would be deeply flawed, it might be useful for the parties and the court to explore the issues before a great deal of money is spent in developing what may turn out to be inadmissible evidence.

In this case, plaintiff Hubbard has submitted a fairly detailed design for surveys, and she seeks an order approving the schedule, methodology, and form of her proposed surveys. She proposes a "mall intercept" survey of mall shoppers

who would, she says, provide a reasonable reflection of the "unsophisticated consumer" who provides the standard in the Seventh Circuit for FDCPA issues. Consumers would be qualified for the survey by answering that they use consumer credit and that they and household members are not employed in a closely related field. Consumers who are willing to participate would spend a few minutes in a survey facility at the mall. They would be provided a letter making essentially the same offer that was made to plaintiff Hubbard and would then be asked a few questions about it. The key question at the end of the survey would be:

> In your opinion, what do you think would happen if you did not accept this settlement offer? Do you think the bill collector would renew or extend this offer? Or do you think this would be your last chance to get a discount off the amount owed? Which of these comes closest to your opinion?

The surveyor then is supposed to hand a card to the consumer with two possibilities: "I think the bill collector would renew or extend this offer"; and "I think this offer would be my last chance to get a discount off the amount owed."

The survey would seek 80 qualified respondents, 40 who had no education beyond high school and 40 with at least some college. The proposed survey would also include a separate control group who would look at a different letter – one from which all time-specific language had been removed – and answer the same questions.

Hubbard wants to force the defendants to address now problems that they may have with the proposed surveys. Defendants have chosen not to engage in any detailed criticism or analysis of the proposed surveys. They contend instead that they are entitled to stand back, wait for the plaintiff to spend the money on the surveys, and then attack the methods and results.

The court is not in a position to give a definitive answer about the admissibility of results of the proposed surveys. It is clear that plaintiff has paid attention to the Seventh Circuit's criticism of the survey offered in one of the cases addressed in *Evory*, as well as to this court's criticism of the earlier proposed surveys addressed in *Headen v. Asset Acceptance, LLC*, 458 F. Supp. 2d 768, 773 (S.D. Ind. 2006), *rev'd*, *Evory*, 505 F.3d 769. Nevertheless, even without the benefit of true adversarial presentation, some serious problems in the proposed surveys are evident, as the court discussed with counsel on the record in the hearing.

For example, the proposed surveys accept the Seventh Circuit's clear suggestion for the critical question, but they add the introductory phrase "In your opinion," which amounts to an explicit invitation for guesswork and speculation. There is no need for that extra phrase.

More fundamentally, it is not clear that closed-end questions are the appropriate way to test for the type of alleged deception in this case. The court

-5-

perceives a significant risk that the closed-end questions would push respondents to read more into the disputed letters than is actually there. The proposed survey even includes an explicit effort to "push" respondents by offering the two options (but not "Don't know/not sure") and then asking: "Which of these comes closest to your opinion?"

The basic problem is that the plaintiff's theory of liability is based on speculation about what the debt collector might do under various future circumstances. What would happen if the debtor contacted the debt collector and asked for more time to consider the offer? What would happen if the debtor contacted the debt collector and asked if he would accept a smaller payment to resolve the debt? What would the debt collector do if the debtor did not respond at all? Would the debt collector then renew the offer? The problem is that the letters simply do not answer those questions. Plaintiff's theory of liability is that the letters implicitly and subtly convey a misleading impression – that no matter what, the settlement offer would never be extended or renewed.

Under these circumstances, there is a substantial risk that the proposed surveys would tend to "force" answers where the survey participant really has no basis to do anything more than speculate or guess about how the debt collector might respond to those circumstances. The survey instructions tell the person conducting the survey to give the respondent two options, and *not* to give the respondent the option of answering "Don't know" or "Not sure." (If the respondent

gives such a response, though, it is supposed to be recorded.)  By not giving the respondent the "don't know/not sure" option, and by asking "which of these comes closest to your opinion?", the survey seems designed to inflate artificially the proportion of respondents willing to guess or speculate.  See Shari Seidman Diamond, *Reference Guide on Survey Research*, Reference Manual on Scientific Evidence 249-51 (Federal Judicial Center 2d ed. 2000) (describing how structure of survey questions can distort results by pushing respondents toward opinions they did not have about questions they had not considered before).  It may well be that a meaningful survey for this case should include an additional screening question for respondents after reading the letter, something like:  "After reading the letter, do you have an opinion about what you think would happen if you did not accept the settlement offer?"  For those who say yes, they could be asked an open ended question for that opinion.

The key question in the proposed survey should be, according to the Seventh Circuit:  "What do you think would happen if you didn't accept the offer? Do you think it would be renewed or extended? Or do you think this would be your last chance to get a discount off the amount owed?"  *Evory*, 505 F.3d at 778.  This court has previously written that "don't know" is the only reasonable answer to the key question.  *Headen*, 458 F. Supp. 2d at 773.  The court recognizes that the Seventh Circuit has disagreed when applying the unsophisticated consumer standard under the FDCPA.  *Evory*, 505 F.3d at 778.  That disagreement does not mean, however, that the survey method should actively discourage the most

reasonable answer. Nor should the survey method actively encourage or even force an opinion from a consumer who had no such reaction when she read the letter.

The control is another critical feature of the proposed surveys. Plaintiff Hubbard proposes to test the disputed letters by showing control groups a similar letter offering a settlement but without "time specific language." In other words, the control groups will be asked the same questions about a letter that makes a settlement offer without a deadline. The court raised questions at the hearing about whether the proposed control actually will test legally relevant differences in meaning or perceived meaning. Plaintiff's legal theory is based not on merely mentioning a date for the offer to end but on the perceived implication that the offer will be a one-time, limited time offer.

In the *Evory* opinion, the Seventh Circuit wrote that there would be no problem, as a matter of law, if the settlement offer letters added one sentence: "We are not obligated to renew this offer." 505 F.3d at 776. Based on *Evory*, then, we know that the letters plaintiff Hubbard received would have been perfectly lawful if they had included that sentence. The legally relevant control is whether the absence of that sentence actually had the effect of misleading the recipients. The court has therefore suggested that the appropriate control comparison is between the challenged letter and the challenged letter with the added disclaimer: "We are not obligated to renew this offer."

For the foregoing reasons, plaintiff's motions to approve the proposed methodology and forms for the proposed surveys are hereby denied. The court will extend for another 90 days (until May 24, 2009) the time for plaintiff to design, complete, and submit to defendants the results of truly probative surveys. All of the conclusions in this entry should be treated as preliminary and subject to revision. The court has not yet had the benefit of expert testimony or a truly adversarial presentation.

So ordered.

Date: February 23, 2009

*David F. Hamilton*

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Steven James Halbert
shalbertlaw@aol.com

Corinne Cantwell Heggie
HINSHAW & CULBERTSON LLP
cheggie@hinshawlaw.com

Tomio B. Narita
SIMMONDS & NARITA LLP
tnarita@snllp.com

Justin M. Penn
HINSHAW & CULBERTSON, LLP
jpenn@hinshawlaw.com

David J. Philipps
PHILIPPS & PHILIPPS LTD
davephilipps@aol.com

Mary E. Philipps
PHILIPPS & PHILIPPS, LTD
mephilipps@aol.com

David M. Schultz
HINSHAW & CULBERTSON
dschultz@hinshawlaw.com

Michael Richard Simmonds
SIMMONDS & NARITA LLP
msimmonds@snllp.com

Jeffrey A. Topor
SIMMONDS & NARITA LLP
jtopor@snllp.com

David Luther Hartsell
MCGUIRE WOODS LLP
dhartsell@mcguirewoods.com

Amy R. Jonker
MCGUIRE WOODS LLP
ajonker@mcguirewoods.com

Brian Patrick O'Meara
MCGUIRE WOODS
bomeara@mcguirewoods.com