UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANGELA T. HUBBARD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MIDLAND CREDIT MANAGEMENT, INC., and MRC RECEIVABLES CORP.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) CASE NO. 1:05-cv-0216-DFH-TAB<br>)<br>)<br>)<br>)<br>)<br>) |
| ANGELA T. HUBBARD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>M.R.S. ASSOCIATES, INC., a New Jersey corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) CASE NO. 1:05-cv-0218-DFH-TAB<br>)<br>)<br>)<br>)<br>) |

ENTRY ON PLAINTIFFS' MOTION TO STAY OR CERTIFY

The Seventh Circuit held that plaintiffs in these two cases have a legally viable claim under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, for deception when defendants sent letters offering to settle their debts within a specified time. *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769 (7th Cir. 2007) (reversing dismissal for failure to state a claim). The Seventh Circuit's opinion in *Evory* taught that plaintiffs would need to present competent survey

evidence to show that the defendants' settlement offers were likely to deceive consumers who received them.  *Id.* at 776.

After remand, this court set deadlines to bring the cases to trial and granted plaintiffs' motions to certify plaintiff classes.  See *Hubbard v. Midland Credit Management, Inc.*, 2008 WL 5384219 (S.D. Ind. Dec.19, 2008) (certifying plaintiff class under Rule 23(b)(3)); *Hubbard v. M.R.S. Associates, Inc.*, 2008 WL 5384294 (S.D. Ind. Dec. 19, 2008) (same).  The court had delayed other deadlines while the class certification motions were pending, including deadlines for plaintiffs to disclose planned expert testimony, including the results of any surveys.

After the classes were certified, and before a new expert deadline was set, plaintiffs filed motions asking the court to approve in advance their proposed survey methods.  Defendants opposed those motions, and the court held a hearing on January 30, 2009.  The court issued an opinion denying the request for advance approval but tentatively discussing some of the issues raised by plaintiffs' proposed methods.  *Hubbard v. Midland Credit Management, Inc.*, 2009 WL 454989 (S.D. Ind. Feb. 23, 2009).  The court also granted plaintiffs an additional 90 days, until May 24, 2009, to provide their delayed expert reports.

Plaintiffs have not disclosed their expert reports.  They instead filed on May 4, 2009 (supplemented on May 12, 2009) the pending motions seeking to stay these cases or to certify for interlocutory appeal the issue of the appropriate

"controls" to use in their proposed surveys.  Plaintiffs explain in their motions that they have already conducted what they call "pre-tests" using the type of control this court suggested and the type that plaintiffs prefer.  If the results of the pre-tests are reliable, then plaintiffs simply will not be able to show legally relevant confusion.  These results prompted the pending motions.  In essence, plaintiffs are unhappy with the Seventh Circuit's "safe harbor" language from *Evory* and this and other courts' application of it to surveys.[1]

---

[1] Plaintiffs' theory in these cases is that debt collectors' settlement offers with time limits deceive the recipients because the debt collectors are almost always willing to extend the stated deadlines and to settle for a little less than they demanded.  The principal focus has been on the deadline.  In *Evory*, the Seventh Circuit drafted "safe-harbor" language that debt collectors could include with their settlement offers with deadlines:  "We are not obligated to renew this offer."  505 F.3d at 775-76.  If that language is included in the offer, then there is no violation of the FDCPA.  In considering plaintiffs' proposed survey, this court suggested that, in view of that holding, the way to test for *legally relevant* confusion in a survey is to compare consumer responses to settlement offers that include that language and offers that do not include that language.  *Hubbard*, 2009 WL 454989 at *4.  The pre-tests showed that the defendants' actual letters caused no more confusion than the Seventh Circuit's safe harbor language.

Plaintiffs propose to use as a control the defendants' settlement letters without any deadline.  That comparison seems to invite a comparison between two letters that violated the FDCPA.  It is easy to imagine that if a debt collector actually sent a letter like plaintiffs' proposed control – a settlement offer without a deadline – there would be a new lawsuit.  The new lawsuit would claim that the new letter was deceptive because it contained no deadline and falsely implied that the offer would be open indefinitely when in fact the debt collector did not intend
(continued...)

Plaintiffs seek a way to put the survey control issue before the Seventh Circuit as quickly as possible, or at least to put the issue before it without investing the money needed to conduct in these cases a full survey of the type plaintiffs contend is correct. They suggest a stay pending a decision by the Seventh Circuit in two cases from Northern Illinois, *DeKoven v. Plaza Associates*, 2009 WL 901369 (N.D. Ill. March 31, 2009) (granting summary judgment after excluding survey evidence as unreliable for lack of relevant control using safe harbor language from *Evory*), appeal docketed, No. 09-2016, and *Kubert v. AID Associates*, No. 1:05-cv-05865 (N.D. Ill. May 7, 2009) (same), appeal docketed, No. 09-2249, or certification of an interlocutory appeal under 28 U.S.C. § 1292(b).

The court denies plaintiffs' motions for stay or certification for interlocutory appeal. The court gave plaintiffs ample time to prepare a fair survey. They hesitated and asked for guidance from the court. When the court asked about the usefulness of providing such guidance, plaintiffs repeatedly assured the court that

---

[1](...continued)
to keep the offer open indefinitely. The court does not view that as a relevant control.

they would live with the results.[2]  And they received a further 90 days to complete their work.

But after conducting the "pre-tests" of the survey, plaintiffs back-tracked on the commitments they made – those commitments that led the court to provide the guidance it did.  After the pre-tests showed that plaintiffs would probably lose, they chose not to go further and to seek further delay, probably another year or so while the other appeals are decided.  The court sees no need to allow further time at this point, subjecting the defendants to continued expense, delay, and uncertainty.

Since the remand, the court has given plaintiffs every reasonable opportunity to prepare their case, including taking the highly unusual step of providing advice on the development of a proper survey.  If plaintiffs did not like

---

[2]At page 9 of the January 30, 2009 transcript, plaintiffs' counsel stated:

> We are willing to live with the results.  If you tell us to do a survey that says A, B, C, and I want you to survey every, every letter rather than the one that you wanted to do, we wrote that survey and it turns out horribly wrong for the class, well, we have just lost.  It is not a free shot.

He later added at page 10:

> We would like to have the opportunity to, to conduct the survey and have 90 days after whatever Your Honor's ruling, whether you decline to rule or whether you do give us guidance and say you have to do X, Y, and Z.  You know, we are willing to do the surveys.  We are willing to spend the money.

See also *id.* at 15-16, 34 (again assuring court that plaintiffs would be willing to carry out the survey and submit the report regardless of the outcome).

the advice, as they apparently did not, they were entitled to go forward with a survey of the type they believed would be appropriate and to test the results in this court and, if need be, in the Court of Appeals. Plaintiffs did not take that course. Instead, when the results of the pre-tests showed they would lose if this court's guidance was correct, they did not follow through on their commitment to the court and they chose not to conduct any further survey.

At this point, plaintiffs have missed their deadline to come forward with evidence that the challenged settlement offers would actually deceive unsophisticated consumers. Without such evidence, it appears that plaintiffs cannot satisfy their burden of proof on an essential element of their claim. Plaintiffs shall show cause no later than July 10, 2009 why the court should not enter summary judgment for defendants on that basis. Defendants may file a response no later than 14 days after plaintiffs respond.

So ordered.

Date: June 19, 2009

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Steven James Halbert
shalbertlaw@aol.com

Corinne Cantwell Heggie
HINSHAW & CULBERTSON LLP
cheggie@hinshawlaw.com

Tomio B. Narita
SIMMONDS & NARITA LLP
tnarita@snllp.com

Justin M. Penn
HINSHAW & CULBERTSON, LLP
jpenn@hinshawlaw.com

David J. Philipps
PHILIPPS & PHILIPPS LTD
davephilipps@aol.com

Mary E. Philipps
PHILIPPS & PHILIPPS, LTD
mephilipps@aol.com

David M. Schultz
HINSHAW & CULBERTSON
dschultz@hinshawlaw.com

Michael Richard Simmonds
SIMMONDS & NARITA LLP
msimmonds@snllp.com

Jeffrey A. Topor
SIMMONDS & NARITA LLP
jtopor@snllp.com

David Luther Hartsell
MCGUIRE WOODS LLP
dhartsell@mcguirewoods.com

Amy R. Jonker
MCGUIRE WOODS LLP
ajonker@mcguirewoods.com

Brian Patrick O'Meara
MCGUIRE WOODS
bomeara@mcguirewoods.com

-8-